Carroll A. STANLEY; James O. Hanson; Timothy T. Heskett; Mark H. Wanta; James Rogers; Kevin E. Vierra; Roberta A. Mulkins, Plaintiffs–Appellees,

v.

CITY OF TRACY, Defendant–Appellant.

Nos. 95–16242, 95–17301.

United States Court of Appeals, Ninth Circuit.

Argued Oct. 10, 1996.

Submission Deferred Oct. 22, 1996.

Resubmitted March 5, 1997.

Decided July 16, 1997.

Richard C. Bolanos, Cynthia O'Neill, Julie F. Tompkins and Jack W. Hughes, Whitmore, Johnson & Bolanos, Mountain View, CA, for the Defendant-Appellant.

Duane W. Reno, Davis, Reno & Courtney, San Francisco, CA, for the Plaintiffs-Appellees.

Before WOOD, Jr.,* SCHROEDER, and HALL, Circuit Judges.

* The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

SCHROEDER, Circuit Judge:

Plaintiff–Appellees are employees of the City of Tracy police department who sued the City for overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219. The City contended that Plaintiffs fell within the FLSA's exemption for executive and administrative employees. *See* 29 U.S.C. § 213(a)(1). The primary issue at trial and on appeal is whether, during the relevant period, Plaintiffs were paid "on a salary basis" under the test codified at 29 C.F.R. § 541.118(a).

After a bench trial, the district court granted judgment for Plaintiffs and awarded back overtime pay, following then-applicable circuit law. The City timely appeals, and we have jurisdiction under 28 U.S.C. § 1291. We now follow the Supreme Court's decision in *Auer v. Robbins*, —— U.S. ——, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), decided during the pendency of this appeal. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 2517–18, 125 L.Ed.2d 74 (1993) ("When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review. . . .").

*Auer* resolved a split among the circuits as to the proper application of the salary-basis test. The Court disapproved our court's decisions holding that the test could not be satisfied where employees were subject to a policy authorizing deductions in pay as discipline, even if no such deductions were ever made. *See, e.g., Abshire v. County of Kern*, 908 F.2d 483, 487 (9th Cir.1990). We now must conclude that Plaintiffs were paid on a salary basis during the period in dispute, and accordingly were within the FLSA's exemption for executive and administrative employees. We therefore reverse.

## I. *Background*

All Plaintiffs except Roberta Mulkins are police sergeants of the City. Mulkins is employed by the City's police department as a

Services Division Supervisor. The City of Tracy became subject to the requirements of the FLSA on April 15, 1986, and implemented the FLSA for its employees by resolutions on August 6, 1985, and October 15, 1985. The City paid overtime compensation to its police sergeants from April 15, 1986, until March 1987, and resumed payment of overtime to the sergeants on August 1, 1993. From March 1987 to August 1, 1993, the City treated the sergeants as exempt from the FLSA's overtime requirements. Plaintiff Mulkins' position as Services Division Supervisor was also treated as exempt from overtime during the period in dispute.

In March 1987, following negotiations between the City and a police bargaining representative, the city's police sergeants were reclassified from the Police Bargaining Unit, a unit considered non-exempt and entitled to overtime, to the City's Mid–Management Unit, a classification the city considered exempt from the overtime requirements of the FLSA. In their new classification, the sergeants received a 23% increase in their base rate of pay and received 72 hours per year of paid management leave, but they no longer received educational incentive pay, competency certificate incentive pay, lump sum holiday pay, or overtime pay. In August 1993, after commencement of this suit and following additional bargaining, the sergeants were removed from the Mid–Management classification, and placed back in a classification that received overtime pay.

Plaintiffs seek overtime pay from June 24, 1991, two years prior to the filing of the complaint, to August 1, 1993, when they again began receiving overtime pay.[1] *See* 29 U.S.C. § 255(a) (two-year statute of limitations). During that period, Plaintiff Mulkins' position as Services Division Supervisor was also classified in the City's Mid–Management Unit. At all relevant times Plaintiffs were paid at a rate of more than $250 per week, and received their pay in fixed semimonthly increments. *See* 29 C.F.R. §§ 541.1(f), 541.2(e), 541.118(a).

---

**1.** Plaintiff James Rogers seeks overtime pay from December 16, 1991, the date of his promotion to sergeant.

The dispute in this case is over the effect of the City's disciplinary policies on the Plaintiffs' status as "salaried" employees. *See id.* Plaintiffs concede that aside from the salary-basis test they meet all other requirements for classification as bona fide executive or administrative employees. *See 29 C.F.R. §§ 541.1(f), 541.2(e).*

During the relevant period, the City maintained Personnel Rule 12, which authorizes disciplinary suspensions without pay. The Rule provides in relevant part:

SUSPENSION

The Personnel Officer may suspend an employee without pay from his position in accordance with disciplinary procedures indicated in Rule 11. Suspension without pay shall not exceed thirty calendar (30) days.

A department head may suspend an employee after affording due process rights for not more than three (3) working days for any one offense.

The district court made the following findings of fact regarding the City's disciplinary suspension policy:

17. Under Personnel Rule 12, the Department Head, in this case the Chief of Police, had sole discretion to implement disciplinary suspensions of three days or less. The City Manager had sole discretion to implement disciplinary suspensions of greater than three days. In exercising that discretion, the City Manager would review proposed discipline with legal counsel to ensure compliance with all applicable laws. In actual practice, City Manager Michael Locke would also review suspensions of three days or less and submit them to the Personnel Advisory Board for recommendation before implementation; however, there was no requirement under the Rules that he do so. The City did not impose any discipline unless it believed it had fully complied with procedural due process requirements of progressive discipline, notice of charges, and an opportunity to respond. . . .

18. At all times relevant to this lawsuit, it was the understanding of all of the plaintiffs and of the Chiefs of Police who were their department heads that plaintiffs were subject to the provisions of Personnel Rule 12 and that, pursuant to those provisions, the plaintiffs could be suspended without pay for periods of less than a full week for reasons other than infractions of safety rules of major significance, such as unsatisfactory job performance, inattention to duty, excessive absenteeism, and violations of rules against subjecting the Police Department to disrepute.

. . . .

22. None of the plaintiffs were suspended without pay as a disciplinary measure during the period from April 15, 1986, to and until August 1, 1993. However, it was the understanding of plaintiffs and their Chiefs [of Police] that the Chiefs had the same authority to suspend them during the time they were classified as mid-management employees as they did before.

The district court's factual findings are not seriously disputed.

The district court also found that Plaintiff Heskett was suspended without pay under Rule 12 for less than a full week in October 1985, and again in November 1994. At the time of each suspension, however, Heskett was considered non-exempt and entitled to overtime pay. During the period between 1988 and 1990, while they were classified in the Mid–Management unit, Plaintiffs Heskett and Hanson received warnings that they could be suspended without pay by the Chief of Police as a disciplinary measure.

Relying on this court's decisions in *Hurley v. Oregon,* 27 F.3d 392, 395 n. 7 (9th Cir. 1994), and *Abshire,* Plaintiffs argued in the district court that, although none of them had actually been suspended during the relevant time period, Personnel Rule 12 was nonetheless an explicit city policy which made them "subject to" disciplinary suspensions that were inconsistent with "salaried" status under 29 C.F.R. § 541.118(a). Plaintiffs therefore argued that they were outside the FLSA exemption, and were entitled to back payments of overtime. The district court agreed, and awarded the Plaintiffs back pay.

## II. *Discussion*

For an employee to fall within the FLSA's exemption for executive and administrative employees, 29 U.S.C. § 213(a)(1), that employee must be paid "on a salary basis." 29 C.F.R. §§ 541.1(f), 541.2(e). The regulations implementing the FLSA prescribe the test for determining whether an employee is paid "on a salary basis":

> An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to [certain provided exceptions], the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

29 C.F.R. § 541.118(a).

As the district court correctly concluded, under the law of this circuit prior to *Auer*, an employee did not meet the "salary basis" test if the employer maintained an explicit policy which authorized deductions from pay that were inconsistent with 29 C.F.R. § 541.118(a). *See Abshire*, 908 F.2d at 487; *Hurley*, 27 F.3d at 395 n. 7. The fact that no deductions had actually been made was immaterial; if an express policy called for impermissible deductions and the employee was "subject to" that policy, the employee was not a "salaried" employee. *Abshire*, 908 F.2d at 487.

Other circuits had reached differing conclusions. The Eighth and Eleventh Circuits had held that actual impermissible deductions were required before an employee would be found to be non-salaried. *Auer v. Robbins*, 65 F.3d 702, 710 (8th Cir.1995) ("The mere possibility of an improper deduction in pay does not defeat an employee's salaried status."); *Atlanta Prof. Firefighters Union Local 134 v. City of Atlanta*, 920 F.2d 800, 805 (11th Cir.1991). Four circuits agreed with our holding in *Abshire* that actual deductions were not required. *See Yourman v. Dinkins*, 84 F.3d 655, 656 (2d Cir. 1996); *Carpenter v. City & County of Denver*, 82 F.3d 353, 359–60 (10th Cir.1996); *Kinney v. District of Columbia*, 994 F.2d 6, 11 & nn. 2, 4–5 (D.C.Cir.1993); *Klein v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 990 F.2d 279, 286 (7th Cir.1993). The Sixth Circuit agreed generally that actual deductions were not required, but held that they were relevant in discerning the meaning of an ambiguous personnel policy. *Michigan Ass'n of Gov't Empls. v. Michigan Dep't of Corrs.*, 992 F.2d 82, 86 (6th Cir.1993).

In *Auer*, the Supreme Court resolved these disparate approaches. The Court recognized that the salary-basis test is "a creature of the Secretary [of Labor]'s own regulations," and that the Secretary's interpretation of the regulation is therefore controlling "unless plainly erroneous or inconsistent with the regulation." *Auer*, —— U.S. at ——, 117 S.Ct. at 911 (citations and internal quotation marks omitted); *see* 29 U.S.C. § 213(a) (giving Secretary authority to "define[ ] and delimit[ ]" the terms "bona fide executive, administrative, or professional capacity"). The Court therefore turned first to the Secretary's interpretation of the salary-basis test, which the Secretary furnished in an amicus brief filed at the request of the Court. *Auer*, —— U.S. at ——, 117 S.Ct. at 911; *see also id.* at ——, 117 S.Ct. at 912 (fact that interpretation comes in form of a legal brief does not make it unworthy of deference). Finding the Secretary's interpretation consistent with the regulation, the Court upheld and applied it. *Id.* at ——, 117 S.Ct. at 911.

Under the Secretary's interpretation as upheld and applied in *Auer*, employees fall outside the salary-basis test if they "are covered by a policy that permits disciplinary or other deductions in pay 'as a practical matter.'" *Id.* (quoting Secretary's *amicus* brief). That standard is met in one of two circumstances: either when the employer has an actual practice of making such deductions, or when the employment policy at issue "creates a 'significant likelihood' of

such deductions." *Id.* A policy creates a "significant likelihood" of impermissible deductions if it " 'effectively communicates' that [such] deductions will be made in specified circumstances." *Id.* A written policy which is nominally applicable to all employees, both salaried and non-salaried, and authorizes deductions which would be proper only for non-salaried employees, does not, without more, communicate as a practical matter that such deductions will be made for employees that otherwise satisfy the salary test. This interpretation avoids the imposition of "massive and unanticipated overtime liability" on employers merely because they maintain broadly worded policies nominally covering whole ranges of employees, which they have not applied, and are not likely to apply, to salaried employees. *Id.*

■ Under the principles adopted in *Auer*, the Plaintiffs in this case were paid on a salary basis. As in *Auer*, the disciplinary policy at issue nominally covers all city personnel, both salaried and non-salaried. *See Auer*, —— U.S. at ——, 117 S.Ct. at 911. No actual suspensions were imposed on any employee in the Mid–Management Unit, and the policy authorizing suspensions does not "effectively communicate" that any employees in that Unit *will* be suspended in any specified circumstance. *See id.* Rather, the availability under Rule 12 of disciplinary suspensions is at the discretion of the City's personnel officers.

The record here reflects even more strongly than in *Auer* that any authorized suspensions of less than a week would in all likelihood affect only non-salaried personnel. *See id.* at —— – ——, 117 S.Ct. at 911–12. City Manager Michael Locke testified, and the district court found, that it was the City Manager's practice to review all disciplinary suspensions with legal counsel and/or the City's Personnel Advisory Board before implementation, to ensure compliance with all applicable laws, including the FLSA. The City Manager also testified that in October 1991, the City became specifically aware that to be consistent with the FLSA, any suspension of a salaried employee could not be for less than a week. With this awareness on the part of the City, and with the City's practice of reviewing all suspensions for statutory compliance before implementation, it is not "significantly likely" that salaried personnel would ever have been subject to a suspension inconsistent with their salaried status. *See Auer*, —— U.S. at ——, 117 S.Ct. at 911 (refusing, even without factual analysis, to infer any likelihood of impermissible deductions from a broad policy facially applicable to all employees). Disciplinary sanctions consistent with salaried status, including suspensions in full-week increments, suspensions for violation of safety rules of major significance, demotion, and discharge, remained available for discipline of salaried employees.

The actual suspensions imposed on Plaintiff Heskett in 1985 and 1994 do not change the result. Those suspensions were imposed at times when Heskett was classified as a non-salaried employee who was entitled to overtime. They do not support any inference that similar suspensions would have been imposed while Heskett was classified in the Mid–Management Unit.

The warnings given to Plaintiffs Heskett and Hanson during the 1988–90 period also do not affect the result. Because the warnings could have referred to suspensions in full-week increments, which would have been consistent with salaried status, see 29 C.F.R. § 541.118(a), they did not "effectively communicate" that impermissible suspensions would be made. Plaintiffs argue the warnings could only have meant suspensions of three days or less, because the warnings specifically referred to suspensions by the Chief of Police, and the Chief was authorized under Rule 12 to impose suspensions of up to only three days' duration. It is fair to infer, however, that warnings of possible suspension encompassed suspensions of up to 30 days, which could be imposed by the City Manager. Moreover, given the City Manager's practice of reviewing all suspensions for compliance with applicable laws, it is unlikely an improper suspension would have been imposed on any Plaintiff while that Plaintiff was a salaried employee.

■ Finally, the understanding of the Plaintiffs and the Chief of Police that Plaintiffs could be suspended under Rule 12 for

periods of less than a full week is not determinative. *See* Findings of Fact 18 & 22, quoted *supra.* The controlling factor is not whether the department head or the employees subjectively believed the employees could be subject to improper deductions. Under *Auer,* the dispositive factors are whether there were either actual deductions, or a significant likelihood of deductions. As discussed, neither existed in this case. The practice of the City was to review suspensions for compliance with, among other statutes, the FLSA. The City has at all relevant times regarded these employees as exempt, and would not have approved suspensions that in the City Manager's view would have jeopardized that status. The record shows no significant likelihood that any Plaintiff would have actually suffered an impermissible suspension by the Chief of Police, regardless of either the Plaintiffs' or the Chiefs' subjective understanding.

### III.  *Conclusion*

The judgment for Plaintiffs and the award of attorneys' fees are reversed. The case is remanded for entry of judgment for Defendant.

REVERSED and REMANDED.