159 F.3d 460
 4 Wage & Hour Cas.2d (BNA) 1736,
98 Daily Journal D.A.R. 11,183,
98 Daily Journal D.A.R. 8052
 Michael T. McGUIRE; James P. Klum; Grant Coffey; Patrick
A. Dooney; Jerry L. Ivie; Robert L. Voris; Delmar S.
Stevens; Ronald C. Harris; Darryl F. Cornelius; Terry M.
Kandle; Howard W. Boyte, Jr.; George R. Jacobsen; David
M. Disciascio; John S. Bisenius; Robert L. Eurick,
Plaintiffs-Appellants,
v.
CITY OF PORTLAND, Defendant-Appellee.
 No. 97-36088.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 2, 1998.
Decided Oct. 29, 1998.
 
 Henry J. Kaplan, Bennett, Hartman, Reynolds & Wiser, Portland, OR, for plaintiffs-appellants.
 Madelyn Wessel, Office of City Attorney, Portland, OR, for defendant-appellee.
 Appeal from the United States District Court for the District of Oregon; Robert E. Jones, District Judge, Presiding. D.C. No. CV-97-00384-REJ.
 Before: GOODWIN, SKOPIL and SCHROEDER, Circuit Judges.
 GOODWIN, Circuit Judge.
 
 
 1
 Plaintiff-Appellants, past and present battalion chiefs in the City of Portland's Fire Bureau, sued the city for overtime pay under the Fair Labor Standards Act, 29 U.S.C. §§ 201-19 (1994) ("FLSA"). Earlier proceedings resulted in a remand for reconsideration in light of Auer v. Robbins, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). The district court granted the City's motion for summary judgment, and the battalion chiefs again appeal. We affirm.
 
 
 2
 The only remaining issue in this case is whether the plaintiffs fall within the FLSA's overtime exemption for executive and administrative employees. See 29 U.S.C. § 213(a)(1) (1994). The question turns on the correct application of the "salary basis" test, codified at 29 C.F.R. § 541.118(a) (1998) and recently clarified by the Supreme Court in Auer v. Robbins. The relevant facts are not in dispute; the dispute is about the legal effect of the facts.
 
 
 3
 Although the City acknowledges that under the FLSA, employees ordinarily must be paid one and one-half times their normal hourly wage for hours exceeding 40 hours worked in one week, the City argues that the Chiefs fall into one of the limited FLSA exemptions, inasmuch as the Chiefs are "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1) (1994). The Chiefs contend in response that they are not salaried professional employees, but hourly workers subject to disciplinary suspension of pay for tardiness, unexcused absences and other infractions of work rules.
 
 
 4
 Litigation concerning overtime pay under the FLSA is commonplace, and the respective parties tend to argue that a particular job fits into the nomenclature that is most advantageous, monetarily, to that party. Recognizing the substantial financial incentives of the parties in these cases, courts have abandoned nomenclature in favor of a hard look at salary and the conditions under which it can be interrupted. See, e.g., Childers v. City of Eugene, 120 F.3d 944, 946 (9th Cir.1997).
 
 
 5
 "For an employee to fall within the FLSA's exemption for executive and administrative employees, 29 U.S.C. § 213(a)(1), that employee must be paid 'on a salary basis.' " Stanley v. City of Tracy, 120 F.3d 179, 183 (9th Cir.1997)(citing 29 C.F.R. §§ 541.1(f), 541.2(e)).
 
 
 6
 The regulations implementing the FLSA prescribe the test for determining whether an employee is paid "on a salary basis":
 
 
 7
 An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.
 
 
 8
 29 C.F.R. § 541.118(a) (1998). The Supreme Court, deferring to the Secretary of Labor, interpreted "the salary-basis test to deny exempt status when employees are covered by a policy that permits disciplinary or other deductions in pay 'as a practical matter.' That standard is met, the Secretary says, if there is either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." Auer, 117 S.Ct. at 911.
 
 
 9
 As the parties did not suggest that there was an actual practice of imposing pay deductions, the issue for the district court was whether there was a significant likelihood of such deductions being made. The court concluded that there was not.
 
 
 10
 Where a broad disciplinary policy applies to all employees, including those not paid on a salary basis, "[n]o clear inference can be drawn as to the likelihood of a sanction's being applied to [the salaried employees]." Id. at 911-12. Furthermore, where a range of suspensions could be imposed, some of which would be consistent with salaried status, the policy does not effectively communicate that impermissible suspensions would be made as to the salaried employees. Stanley, 120 F.3d at 184. Finally, this court has held that the "controlling factor is not whether the department head or the employees subjectively believed the employees could be subject to" disciplinary deductions, but rather whether there was, objectively, a significant likelihood that penalties inconsistent with salaried status would be made. Id. at 185.
 
 
 11
 The Chiefs contend that they are subject to disciplinary suspension under the City Code, the City's personnel manual, and the Fire Bureau's own policies. They suggest that the following items of evidence establish, or at least create a material issue of fact, that there was a significant likelihood that sanctions would be issued: (1) affidavits by several administrative officers regarding the accepted scope of the disciplinary policies; (2) the existence of a collective bargaining relationship in which the Chiefs were participants; (3) the district court's prior finding that the City had an express policy subjecting the Chiefs to disciplinary suspensions; (4) the City's payroll accounting system; (5) a decision by the State of Oregon Employment Relations Board, finding that the Department's policies permitted the full range of disciplinary suspensions. The district court correctly found that these items of evidence do not create a material issue of fact regarding the employment status of the Chiefs.
 
 
 12
 The Chiefs focus on the affidavits of supervisory and administrative officers, who stated that they understood the Department's disciplinary policies to apply equally to all staff, and that they would have imposed sanctions on any Chief who violated the rules, including sanctions that would be inconsistent with salaried status. However, the law in this circuit establishes that the subjective understanding of the department supervisors is not the issue-rather, the court must examine objectively the actual likelihood of sanctions being imposed. See Stanley, 120 F.3d at 185. Here, a jury would not be justified in relying on the subjective views of department employees to find that the Chiefs were subject to disciplinary pay deductions.
 
 
 13
 Similarly, the Chiefs contend that their participation in the collective bargaining process requires each of them to have a full and complete understanding of the policies and procedures of the department, which in turn makes them aware of the possibility they will be subject to disciplinary sanctions. As noted in connection with the opinions of supervisors, this evidence goes merely to the subjective understanding of department employees and does not support a finding of fact that there was a substantial likelihood of disciplinary pay deductions being imposed.
 
 
 14
 The Chiefs also rely on the prior finding of the district court in this case that the City has an express disciplinary policy that applies to the Chiefs. In making this argument, the Chiefs fail to account for the change in the law signalled in Auer v. Robbins.
 
 
 15
 Under prior law, a plaintiff could successfully claim that he was a non-salaried employee by showing that his pay was "subject to deduction" for tardiness, absence or other occurrence. The mere theoretical possibility of such a deduction, no matter how unlikely, was sufficient to render plaintiff's salary contingent, and therefore nonexempt. See, e.g., Abshire v. County of Kern, 908 F.2d 483, 486-87 (9th Cir.1990). However, the Supreme Court held in Auer v. Robbins that more is required than a mere theoretical possibility of sanctions-one must show a substantial likelihood that sanctions will be imposed. See Childers, 120 F.3d at 946-47, (noting that Auer held that the mere existence of a disciplinary policy that nominally subjects exempt employees to sanctions does not render employees nonexempt under the salary basis test, and noting that Auer implicitly overrules Abshire in this regard). The Chiefs' reliance on the district court's earlier findings is no longer well-founded.
 
 
 16
 The Chiefs make much of the intricate payroll accounting system of the City and contend that the accounting procedures demonstrate that the Chiefs are paid on an hourly basis, rather than a salaried basis. Indeed, the City does account for the Chiefs' time on a hour-by-hour basis, recording sick leave and other absences, as well as additional hours worked beyond the standard shift. The purpose of this paper trail is not clear.
 
 
 17
 The crucial piece of evidence in favor of the City is the actual hourly rate of the Chiefs. Chiefs may work either a 40 hour work week or a 53 hour work week. The hourly rates differ for the two schedules, but the weekly salary is the same: the City begins with the weekly salary figure, and works backward for each schedule to arrive at an hourly rate that comports with the salary. This practice is clearly designed to support a bureaucratic accounting agenda, which has not been disclosed in the record. However, it cannot reasonably be viewed as evidence that the Chiefs are in fact hourly employees. The same can be said of the hourly leave accounting; although the system as presented to the district court is complicated, the parties agree that the Chiefs' base salary is not subject to reduction for absences from work in the ordinary course of events.
 
 
 18
 Finally, the Chiefs suggest that the ruling by the State of Oregon Employment Relations Board is evidence that the City maintained a policy which would render the Chiefs nonexempt during the period in question. In 1994, the City attempted to adopt an ordinance regarding disciplinary sanctions, expressly providing that salaried employees would not be disciplined in violation of the FLSA requirements for exempt employees.
 
 
 19
 The Chiefs contested the adoption of the ordinance before the Employment Relations Board, which ruled that if the City wanted to "change the status quo in regard to disciplinary procedures and policies" it needed to do so through the collective bargaining process. Although the Board's ruling appears to address procedure rather than substance, the Chiefs argue that the ordinance, which promised compliance with FLSA regarding exempt employees, must have been a substantive change to the City's policy, and that therefore the City's actual policy prior to the adoption of the ordinance must have rendered the Chiefs non-salaried. The City argues that the ordinance was designed to clarify a policy that was already in place, rather than to institute a policy change.
 
 
 20
 On the issue of the ordinance, the district court said: "the parties agree that the City now has, as an ordinance, a specific provision that employees who are exempt from the FLSA are not subject to reductions in pay that would violate the FLSA. Therefore, as in the cases described above, plaintiffs are not now, and have not been, subject as a practical matter to deductions in pay that violate the FLSA...." Viewed in the light most favorable to the Chiefs, the Board's decision might support a conclusion that the City was attempting to change its policy to conform with the FLSA, as suggested by the Employment Relations Board. However, it is equally reasonable to conclude that the City was merely trying to narrow its written policy to conform to its actual policy.
 
 
 21
 The district court correctly concluded that there was no substantial likelihood of the City's disciplinary policy being enforced to impose salary deductions upon the Chiefs in a manner that would make them non-salaried hourly employees under the FLSA.
 
 
 22
 AFFIRMED.