Delane K. PALAZZOLO–ROBINSON,
Plaintiff,

v.

SHARIS MANAGEMENT
CORPORATION, et
al., Defendants.

No. C98–5604FDB.

United States District Court,
W.D. Washington,
at Tacoma.

Aug. 18, 1999.

Paul H. King, Seattle, WA, for Plaintiff.

Susan Kathleen Stahlfeld, Miller Nash Wiener Hager & Carlsen, Seattle, WA, for Defendants.

## AMENDED ORDER ON PLAINTIFF'S AND DEFENDANTS' CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT

BURGESS, District Judge.

In the Order issued earlier on this date, a single sentence pertinent to another case was inadvertently left in the draft of this Order. To prevent further confusion, this Order is reissued in its entirety:

This matter comes before this court on the parties' cross-motions for partial summary judgment. The court has considered the pleadings filed in support of and in opposition to the motions, and the files herein.

### SUMMARY JUDGMENT STANDARD

Summary Judgment is proper when there are no genuine issues of material fact and the moving party is entitled to

judgment as a matter of law.[1] *Retail Clerks Union Local 648, AFL—CIO v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir.1983). *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If summary judgment is to be denied the moving party, there must be evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The nonmoving party must make a "showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The nonmoving party "may not rest on conclusory allegations, but must set forth specific facts showing that there is a genuine issue for trial." *Berg v. Kincheloe,* 794 F.2d 457, 459 (9th Cir.1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex,* 477 U.S. at 323–324, 106 S.Ct. 2548. Moreover, it is the "substantive law [which] will identify which facts are material for the purposes of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 at 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

## FACTUAL OVERVIEW

Plaintiff is a former employee of defendant Sharis Management Corporation which owns the Sharis Restaurant chain.[2] Plaintiff was "employed as an assistant manager [for a Sharis Restaurant] from May 12, 1994 to February 20, 1997." (Decl. of Delane Palazzolo–Robinson of 3/9/99.) As an assistant manager, plaintiff "was responsible for guiding, assisting, and directing the [restaurant's] crew" to "insure [the corporate standard's for] custom-

er service [were] met." (*Id.* at 1–2.) Plaintiff also "accepted [prospective employee's] applications," conducted employee interviews, made "recommendations to [her] general manager" regarding hiring decisions, and "reviewed ... and approved" employee work schedules (*Id.* at 4.) She also conducted "employee evaluations[,] ... recommend[ed] work shifts," and submitted her recommended employee work schedules to her general manager. (Dep. of Delane Palazzolo–Robinson of 4/20/99 at 65–68.)

As an assistant manager, plaintiff was also "involved in the accounting aspects of running a restaurant." (*Id.* at 100.) She assisted in record keeping, including the "sales ... and labor variance record[s]," and "helped" the general manager in the preparation of budgets. (Dep. of Delane Palazzolo–Robinson at 82–84.)

After some initial training, plaintiff was employed as a general manager for a Sharis Restaurant from February 20, 1997 until October 27, 1998. (*See* Decl. of Palazzolo–Robinson of 3/9/99 at 1.) The restaurant's general managers are responsible for the "overall operation" of the restaurant. (Decl. of Sharon Griggs of 4/11/99 at ¶ 5.) As the general manager, plaintiff's tasks included "making the decision to hire" employees as well as new employee orientation. (Decl. of Palazzolo–Robinson at 4.) Plaintiff was also responsible for "training employees[,] .... [s]etting or adjusting pay and hours of work[,] ... [d]irecting [the] employees work[,] ... [m]aintaining [the restaurant's] records[,] ... [a]ppraising employee productivity[,] ... [h]andling employee complaints, grievances and discipline[,] ... [p]lanning and apportioning work among [the] employees[,] ... [d]etermining merchandise and supplies to be bought,

---

1. "The moving party is 'entitled to judgment as a matter of law' [when] the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which he has the burden of proof." *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

2. The defendants Sharis Corporation and Sharis Restaurant shall hereinafter be referred to as "defendant Sharis Corporation/Sharis Restaurant/defendants."

stocked and distributed[,] ... and [p]roviding for the safety of [the] employees and the [restaurant] property." (Decl. of Griggs at 2–4.) Plaintiff was also responsible for preparation and submission of her restaurant's budget to the corporate offices for approval. (*See* Dep. of Palazzolo–Robinson of at 83.) Both the assistant manager and general manager had the ultimate decision-making authority for the restaurant to which they were assigned. (*See id. at* 82, 89, 93.) Their "exercise ... of ... discretion [and] judgment in determining what need[ed] to be done" in the restaurant was an integral part of their management duties. (*Id. at* 93, 94.) In her position as an assistant manager and later as a general manager, "plaintiff was paid the same amount each week regardless of the number of hours she worked." (Dep. of Palalozzo–Robinson at 18–19, 35–36.)

In October, 1998, the plaintiff's employment was terminated by the defendants. (*See* Defs.['] Cross–Mot. at 3.) At the time of plaintiff's termination, she was "being paid $524.[00] per week in salary...." (Defs.['] Cross–Mot. at 3.) On November 8, 1998, plaintiff filed her "Complaint for Overtime and Minimum Wages, Failure to Keep Records, Wrongful Termination, and Defamation" ("Complaint"). Plaintiff now moves this court for partial summary judgment as to her minimum and overtime wage claims against the defendants pursuant to the Fair Labor Standards Act (FLSA). and the Washington Minimum Wage Act ("WMWA").

Plaintiff alleges that, under the FLSA and the WMWA, she was a non-exempt employee and that the defendants "failed and refused to make any payment for ... work [she performed] in excess of 40 hours." (Pl.['s] Compl. at 4.) Plaintiff also claims that, as a non-exempt employee, under the FLSA she was entitled to overtime wages for all hours worked in excess of her 40 hour workweek. (*See* Pl.['s] Compl. at 3.)

On May 17, 1999, defendants filed their Cross–Motion for Partial Summary Judgment asserting that the plaintiff was exempt from the overtime and minimum wage provisions of the FLSA and the WMWA.

*Sharis Restaurant's Management Structure*

For each Sharis Restaurant, "there is a general manager and two or more assistant managers scheduled, so that there is usually one manager on-site to supervise the hourly employees, handle customer relations, prepare reports, and perform all the other management functions." (Defs.['] Cross–Mot. for Summ.J. at 4.) Each Sharis Restaurant has "between 35 and 40 hourly employees." (*Id.*) The general manager and assistant manager jobs are "crucial to the proper functioning of the restaurant." (*See* Defs.['] Cross–Mot. at 5.) The duties of both the general managers and assistant managers include managerial, supervisorial, and administrative tasks. (*See id.* at 4–5.) "At all times, [either the general manager or assistant manager are] in charge of the restaurant." (Dep. of Palazzolo–Robinson at 98–99.) The restaurant's managers "never stop[ ] being responsible for supervising the employees, handling customer complaints [or], making management decisions." (Defs.['] Cross–Mot. at 5.) "All general managers and assistant managers at Shari's are paid on a salary basis, receiving the same amount in salary each week regardless of the number of hours worked." (*Id. at* 2.)

*Defendant Shari Corporation's Employee Payroll System*

Defendant Shari Corporation "has two different [computer] payroll systems that interact to produce paychecks [and] maintain payroll record keeping" for its Sharis Restaurants. (Decl. of Michael G. Noel of 4/12/99 at ¶2.) These computerized payroll systems "require that payroll information be entered for each employee in variables of an hourly rate and the number of hours per week, regardless of whether the employee is paid on an hourly or [a] salary basis." (*Id.*) This computerized system

will not produce an accurate accounting for a salaried employee if an annual figure is input into the program. (*See id.*) Thus, the payroll figures for salaried employees must be input into the computer based upon an hourly rate. (*See id.* at ¶ 3.)

To get payroll information for salaried employees, the "annual salary [is divided] by 2080 hours (52 weeks times 40 hours per week)" in order to calculate an hourly rate for entry into the computer program. (*Id.* at ¶ 3.) "[F]or each two-week period, [the hourly rate] is multiplied by 80 hours [in order for] the computer [to calculate] an accurate paycheck...." (*Id.*) These were the "mechanics used for creating an accurate paycheck" for the defendants' salaried employees. (*Id.* at ¶ 4.)

**ISSUE:** Whether plaintiff was exempt from the overtime and minimum wage provisions of the Fair Labor Standards Act and the Washington Minimum Wage Act.[3]

## DISCUSSION

■ The Fair Labor Standards Act (FLSA) states the following as to employees who are exempt from its minimum and overtime wage requirements:

The provisions of ... this title shall not apply with respect to—

(1) *any employee employed in a bona fide executive, administrative, or professional capacity ... except that an employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to* *activities not directly or closely related to the performance of executive or administrative activities*, if less than 40 per centum of his hours worked in the workweek are devoted to such activities);....

29 U.S.C. § 213(a)(1) (*emphasis added*). Although the basic hourly guideline for "activities not directly or closely related to the performance of executive or administrative duties" is 40 per cent, in determining whether an employee is a "bona fide executive," hours alone are not dispositive. *See* 29 C.F.R. § 541.103.

Under the FLSA, an employee earning $250.00 or more must satisfy the requirements of what is called the "short test" in determining whether the employee is a "bona fide executive."[4] *See* 29 C.F.R. § 541.1(f). To establish that plaintiff is an exempt "executive, administrator or professional, under the short test defendant Shari's must show that (1) plaintiff's *primary duty* consisted of the management of the restaurant, and (2) she customarily and regularly directed the work of two or more other employees therein." *See* 29 C.F.R. § 541.1(f).

### (1) Primary Duty

The determination of whether an employee has management as his primary duty and, therefore, is exempt from the minimum wage and overtime wage requirements under the FLSA, "must be based on all the facts in a particular case." 29 C.F.R. § 541.103. "The amount of time spent in the performance of the manageri-

---

3. The plaintiff alleges that the defendants violated the Washington Minimum Wage Act ("WMWA"). The WMWA is similar to the FLSA and mirrors the plain language of the FLSA as to both its general requirements as to its minimum wage and overtime compensation provisions as well as its definition of those employees who are exempt under the WMWA. *See Boykin v. Boeing Company*, 128 F.3d 1279, 1281 (9th Cir.1997). Moreover, Washington state court's decisions on wage and hour issues are consistent with federal law. *Chelan County Deputy Sheriffs' Ass'n v. Chelan County*, 109 Wash.2d 282, 291–93,

745 P.2d 1 (1987). Therefore, this court's ruling as to whether plaintiff is an exempt employee under the FLSA shall apply equally to plaintiff's claim that the defendants failed to pay her a minimum wage pursuant to the WMWA.

4. Both the plaintiff and the defendants agree that the FLSA "short test" applies to the plaintiff. Plaintiff earned "from $404.00 to $524.00 each week" while employed by the defendants. (*See* Pl.['s] Mem. in Supp. of Partial Summ.J. at 2.)

al duties is a useful guide in determining whether management is the primary duty of an employee," but it is not dispositive. *Id.* "Time alone ... is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty." *Id.*

In addition to the time spent in the performance of managerial duties, Title 29 of the Code of Federal Regulations lists the following additional four (4) factors as "pertinent" to determining whether management is a primary duty:

> [*a* t]he relative importance of the managerial duties as compared with other types of duties, [*b* ] the frequency with which the employee exercises discretionary powers, [*c* ] his relative freedom from supervision, and [*d* ] the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. For example, in some departments, or subdivisions of an establishment, an employee has broad responsibilities....

29 C.F.R. § 541.103 (*emphasis added* ). These "broad responsibilities" vary from industry to industry, and may require the employee to spend more than 50 percent of his or her time in areas outside of the area of her primary duties while at the same time she performs her management duties "as the day-to-day operations [of the establishment] require." *Id.* This employee is still "considered to have management as [her] primary duty." *Id.*

### (a) Time Plaintiff Spent in the Performance of Managerial Duties

 The primary duty of restaurant assistant managers as well as general managers is managerial because "restaurants could not operate successfully unless the managerial functions of Assistant Managers, such as determining amounts of food to be prepared, running cash checks, scheduling employees, keeping track of inventory, and assigning employees to par-

ticular jobs were not performed." *Donovan v. Burger King. Corp.,* 675 F.2d 516, 521 (2d Cir.1982). Therefore, within the food and beverage industry, a restaurant's assistant manager and general manager have management as their primary duty, even if they spend the majority of their time on non-exempt work, and makes few significant decisions. *See Donovan v. Burger King,* 672 F.2d 221, 227 (1st Cir. 1982).

 Plaintiff seeks to diminish her managerial position by arguing that she spent only "12.25 hours" performing managerial work. (Decl. of Palazzolo–Robinson at 5.) Plaintiff states that the time spent in managerial duties was less than 50% of the "60 hours [she] was scheduled to work each week." (*Id.*) In spite of the time plaintiff attributes to performing non-managerial tasks, in the position of assistant manager as well as in the position of general manager, the plaintiff admits that she "never stop[ped] being in charge of the facility" even while performing other tasks. (Dep. of Palazzolo–Robinson at 98.) Plaintiff was ultimately responsible for the "standards" imposed by the corporation and the restaurant's operation. (Decl. of Palazzolo Robinson at 1–2, 5.) One of plaintiff's employees even attests that the plaintiff *"never* stopped being the manager when she was on duty, even when she was 'on the floor' of the restaurant ... pouring coffee." (Decl. of Patti Nelon of 4/14/99 at ¶ 7 (*emphasis in original* ).) Thus, even though plaintiff may have, at times, spent more than 50% of her time in performing tasks outside of her primary management duties, she remained at all times responsible for assisting in the supervision or directly supervising the day-to-day operations of the restaurant.

### (b) Relative Importance of the Plaintiff's Managerial Duties

"At all times, [either the general manager or assistant manager are] in charge of the restaurant." (Dep. of Palazzolo–Robinson at 98–99.) The restaurant's manag-

ers never stop being responsible for supervising the employees, handling customer complaints, or making management decisions. (*See* Decl. of Sharon Griggs, General Manager of 4/11/99). Plaintiff admits that as an assistant manager, she made recommendations to her general manager regarding the hiring or firing of employees, and that her suggestions or recommendations were given weight in the general manager's ultimate decision. (*See* Decl. of Palazzolo–Robinson at 4.) Moreover, as a general manager she not only made hiring and firing decisions but also made decisions regarding any other change of status of employees under her supervision. (*See id.*)

It is undisputed that there was only one assistant manager and one general manager assigned to each Sharis Restaurant. Although plaintiff, in her declaration, attempts to minimize her duties, the regulations explain that the types of work plaintiff performed are exempt managerial duties. The plaintiff admits, both in her deposition testimony and in her declaration that she performed the types of management tasks described in § 541.102(b). (*See supra* at 2–3.) It may be true that the plaintiff spent time "delivering hot food, taking orders, washing dishes, cooking meals, bussing tables, taking cash, greeting and seating customers, [and] taking out the garbage." (Decl. of Palazzolo Robinson of 3/9/99 at 5.) However, this court does not agree that the aforementioned duties are not closely related to the plaintiff's duties of managing a restaurant as plaintiff seeks to claim. (*See id.*)

As both an assistant manager and as a general manager, plaintiff was ultimately responsible for the restaurant's operations. Her responsibilities place her squarely within the dictates of 29 C.F.R. § 541.103. As both an assistant manager and general manager, the tasks plaintiff performed were "crucial to the proper functioning of the restaurant." (*See* Defs.['] Cross–Mot. at 5.) The duties of both the general managers and assistant managers include managerial, supervisorial, and administrative tasks. (*See id.* at 4–5.)

Plaintiff has not persuaded this court that the "other" duties she performed were any less managerial, for FLSA or WMWA purposes, simply because she performed "other tasks as necessary" for the effective and efficient operation of the restaurant to which she was assigned.

*(c) Frequency With Which the Employee Exercises Discretionary Powers*

Plaintiff admits in her deposition that over the course of the work day, in her position as an assistant manager and even more so when she was promoted to general manager, she used her discretion to make decisions. In her deposition testimony, the plaintiff also concedes that, as both an assistant manager and as a general manager, she had the ultimate decision-making authority for the restaurant to which she was assigned. (*See* Dep. of Palazzolo–Robinson at 82, 89, 93.) Plaintiff admits that, in both positions, she "exercise[d] ... discretion [and] judgment in determining what need[ed] to be done" in the restaurant, and was also in charge of the day-to-day operations for the restaurant. (*Id. at* 93, 94.) The plaintiff supervised the employees, handled customer complaints, and made management decisions crucial to the operation of the restaurant at which she was employed. (*See* Defs.['] Cross–Mot. at 5.) The restaurants could not have operated successfully without the assistant and general manager functions. (*See* Decl. of Sharon Griggs of 4/11/99.) It is clear that plaintiff customarily and regularly exercised discretionary duties on a day-to-day basis.

*(d) Payment on a Salary Basis*

■ Whether a person is "paid on a salary basis" is another factor that is considered when determining whether an individual is a "bona fide executive," and falls within the FLSA's exemption for minimum wage and overtime pay requirements. *See McGuire v. City of Portland,* 159 F.3d 460 (9th Cir.1998). Title 29 of the Code of

Federal Regulations defines being paid on a salary basis as follows:

> (a) An employee will be considered to be paid 'on a salary basis' ... if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a *predetermined amount* constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed ... the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked....

*Stanley v. City of Tracy,* 120 F.3d 179, 183 (9th Cir.1997) (*citing* 29 C.F.R. §§ 541.1(f), 541.2(2)). 29 C.F.R. § 541.118(a) (*emphasis added*). Furthermore, a payroll accounting system which calculates an exempt employees pay on an hourly basis does not indicate that the employee was not salaried and, thus, is subject to the FLSA's minimum wage or overtime wage requirements. *See McGuire v. City of Portland,* 159 F.3d 460, 464 (9th Cir.1998) (City payroll accounting system, which calculated battalion chiefs' pay on an hour-by-hour basis, did not indicate that the chiefs were not salaried and thus were subject to FLSA's overtime requirements.)

Plaintiff argues that the defendants failed to pay the plaintiff overtime, thus violating the FLSA, because she was "paid a salary based upon an hourly rate." (Pl.['s] Mem. at 2.) In November, 1995, plaintiff's base salary was $442.40 per week, and at her termination in October, 1998 her salary had risen to $524.00 per week regardless of the number of hours she worked. (*See id.*) Although the defendants' payroll accounting system calculates an exempt employees' salary, backwards from the annual salary, to pay on an "hour-by-hour basis," this does not indicate that the plaintiff was not salaried and, thus, subject to the FLSA's overtime requirements. *See McGuire,* 159 F.3d at 464.

Plaintiff also acknowledges that, when she was hired, she was told by "Steve Miller and Martha" that "all managers worked 50 hours a week," that she would be paid a predetermined amount, and that compensation would be on a salary basis. (Dep. of Palazzolo–Robinson at 30, 33.) Between November, 1995 and October, 1998, plaintiff was paid a base salary plus a bonus as a management employee. (*See* Decl. of Stephen E. Miller, District Manager of 3/24/99 at ¶¶ 6, 7, 8.) Thus, in spite of plaintiff's assertions, the evidence shows that she was paid more than the hourly employees in the restaurant in which she had been employed. (*See id.*)

*(2) Two or More Employees*

To qualify for the executive exemption, defendants must also prove that plaintiff regularly supervised two or more employees. Each Sharis Restaurant has "between 35 and 40 hourly employees." (Defs.['] Cross–Mot. for Summ.J. at 4.). These employees include bakers, cooks, servers, and hostesses. (*See* Dep. of Palazzolo–Robinson of 4/29/99 at 58.) Throughout her declaration plaintiff attests to regularly managing, supervising or directing her "crew." (Decl. of Palazzolo–Robinson of 3/9/99.) Plaintiff admits that she worked with a "crew of about 30 to 35 employees." (*See id.* at 4.) She testified at her deposition that she also supervised "two [Creating Excellence Officers] at [her] store." (Dep. of Palazzolo–Robinson of 4/20/99 at 60.) Moreover she states that, on any shift at the restaurant, there would be "27–30" hourly employees on duty. (*Id.* at 91.)

## CONCLUSION

This court has weighed and balanced the range of factors applicable to determining whether plaintiff was a bona fide executive under the Fair Labor Standards Act "short test." Defendants have adequately demonstrated that (1) the plaintiff's primary duty was management, and (2) she regularly supervised two or more employees. This court must conclude that plain-

tiff was an exempt employee under both the Fair Labor Standards Act and Washington State's Minimum Wage Act. Therefore, the defendants are exempt from the minimum wage and overtime provisions of the Fair Labor Standards Act and the Washington Minimum Wage Act.

Accordingly, it is hereby

ORDERED:

(1) Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 7) is DENIED. Plaintiff is an exempt employee, pursuant to the Fair Labor Standards Act (29 U.S.C. § 213) and the Washington State Minimum Wage Act (RCW Chapter 49.46); and

(2) Defendants' Cross–Motion for Partial Summary Judgment (Dkt. No. 17) is GRANTED.