Claudio K. NORITA;  Manuel Mangare-
ro;  Lawrence M. Camacho, Plain-
tiffs–Appellants,

v.

Commonwealth of the **NORTHERN
MARIANA ISLANDS**, Defendant–
Appellee.

No. 02–16292.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 2003.

Filed June 5, 2003.

Jeanne H. Rayphand, Brien Sers Nicholas, Saipan, MP, for the Plaintiffs–Appellants.

Karen M. Klaver, Benjamin I. Sachs, Assistant Attorneys General, Saipan, MP, for the Defendant–Appellee.

Before SCHROEDER,. Chief Judge, GOODWIN and TASHIMA, Circuit Judges.

GOODWIN, Circuit Judge:

This appeal by employees who want to collect overtime from their government employer is remarkable only because it presents once again the question whether we must decide a complex jurisdictional question first, or can we "fast forward" to the merits, which could be quickly dis-

posed of with an unpublished memorandum citing clearly established circuit precedent as the district court did.

The Commonwealth of Northern Mariana Islands ("CNMI") seeks a decision on sovereign immunity, the jurisdictional question, so it will not have to respond in future overtime pay cases. Judicial economy cuts both ways. (1) Because this case is easily disposed of on the merits, we should put the merits cart in front of the jurisdictional horse, and close the file, without undertaking a laborious exercise on whether circuit precedent has been overruled by implication by one or more Supreme Court opinions. (2) On the other hand, a jurisdictional precedent in the employer's favor now will produce long term judicial economy by cutting off these cases at the courthouse door. In any event, we are required by our precedent to address CNMI's claim to sovereign immunity before reaching the merits. *See Cardenas v. Anzai,* 311 F.3d 929, 934 n. 2 (9th Cir. 2002).[1]

## I.

Claudio Norita, Manuel Mangarero, and Lawrence Camacho are high-ranking executive or "middle management" administrative officers in CNMI's Department of Public Safety. They sued to recover overtime pay as nonexempt employees under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 ("FLSA"). Relying on the "salary-basis" test, plaintiffs say they are subject to deductions in pay for non-safety related disciplinary reasons. They do not claim that they personally had been subjected to such deductions in pay, but assert that CNMI has an actual practice of imposing, and that it will impose, such deductions, thus making them eligible to recover overtime pay.

CNMI moved to dismiss the action for want of jurisdiction, arguing that it is entitled to sovereign immunity. Citing *Magana v. CNMI,* 107 F.3d 1436, 1440 (9th Cir.1997), for the proposition that CNMI "does not have an Eleventh Amendment immunity defense," the district court retained jurisdiction and proceeded to grant summary judgment in favor of CNMI on the authority of *McGuire v. City of Portland,* 159 F.3d 460 (9th Cir.1998).

## II.

### A. Sovereign Immunity

#### 1. Overview of CNMI's relationship with the United States

For three decades following World War II, the United States administered the Northern Mariana Islands as the United Nations trustee for the Trust Territory of the Pacific Islands. *Fleming v. Dep't of Public Safety,* 837 F.2d 401, 403 (9th Cir. 1988). In 1976, the Northern Mariana Islands and the United States entered into the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America (the "Covenant"). Act of Mar. 24, 1976, Pub. L. No. 94–241, 90 Stat. 263. The preamble to the Covenant states that "the people of the Northern Mariana Islands and the people of the United States share the goals and values found in the American system of government based on the principles of government by the con-

---

1. This Circuit has thus chosen the path followed by three of our sister Circuits. *See Hale v. Mann,* 219 F.3d 61, 66–67 (2d Cir. 2000); *Martin v. Kansas,* 190 F.3d 1120, 1126 (10th Cir.1999); *Seaborn v. Florida,* 143 F.3d 1405, 1407 (11th Cir.1998). *But see Broselow v. Fisher,* 319 F.3d 605, 607 (3d Cir.2003); *Strawser v. Atkins,* 290 F.3d 720, 729–30 (4th Cir.2002); *Floyd v. Thompson,* 227 F.3d 1029, 1035 (7th Cir.2000); *Parella v. Retirement Bd. of the R.I. Employees' Retirement Sys.,* 173 F.3d 46, 53, 57 (1st Cir.1999).

sent of the governed, individual freedom and democracy[.]" *Id.*

Section 101 of the Covenant establishes CNMI as "a self-governing commonwealth ... in political union with and under the sovereignty of the United States of America." Thus, the United States has "complete authority over foreign affairs and defense matters." *See* S. Rep. 94–596, 94th Cong., 2d Sess. 1976, *reprinted in* 1976 U.S.C.C.A.N. 448, 452. Section 201 provides that the "people of the Northern Mariana Islands will formulate and approve a Constitution," and Section 203(a) provides that the "Constitution will provide for a republican form of government with separate executive, legislative and judicial branches and will contain a bill of rights." Section 402 provides generally that the Federal District Court for the Northern Mariana Islands will have "the jurisdiction of a district court of the United States."

In section 501(a), the Covenant expressly adopts several provisions of the United States Constitution:

To the extent that they are not applicable of their own force, the following provisions of the Constitution of the United States will be applicable within the Northern Mariana Islands as if the Northern Mariana Islands were one of the several States: Article I, Section 9, Clauses 2, 3, and 8; Article I, Section 10, Clauses 1 and 3; Article IV, Section 1 and Section 2, Clauses 1 and 2; Amendments 1 through 9, inclusive; Amendment 13; Amendment 14, Section 1; Amendment 15; Amendment 19; and Amendment 26; provided, however, that neither trial by jury nor indictment by grand jury shall be required in any civil action or criminal prosecution based on local law, except where required by local law.

In addition, section 502(a)(2) provides that the laws of the United States shall generally be applicable to CNMI as they are applicable to the several States.

"The Covenant and the CNMI constitution became effective on January 9, 1978, at which time the people of that territory became self-governing." *Magana,* 107 F.3d at 1439.

## 2. Ninth Circuit Law

In 1988, we held in *Fleming,* 837 F.2d at 405–06, that CNMI is not entitled to Eleventh Amendment immunity against a private action under 42 U.S.C. § 1983 because the Covenant did not include the Eleventh Amendment among the United States constitutional provisions expressly adopted in section 501(a). The *Fleming* court reasoned:

From the specificity with which the applicable provisions of the United States Constitution are identified, it is clear that the drafters considered fully each constitutional amendment and article for inclusion in the Covenant. That they deliberately declined to include the eleventh amendment unequivocally demonstrates their desire that [CNMI] not be afforded eleventh amendment immunity.

837 F.2d at 405. *Fleming* also explained that, in reaching this conclusion, it did not ignore the language of section 502(a)(2), which "makes all laws, including section 1983, applicable to [CNMI] 'as they are applicable to the several states' ":

[H]ad the drafters intended to make the eleventh amendment applicable in [CNMI], they would have done so directly in section 501(a), the section that enumerates all of the constitutional provisions applicable to [CNMI], rather than incorporating it *sub rosa* through section 502(a)(2). A plain reading of the Covenant indicates a separation between

constitutional and nonconstitutional provisions.... Were we to incorporate the eleventh amendment through section 502(a)(2), we would reduce that amendment to mere "law" "generally applicable to the states," as opposed to a constitutional provision.

*Id.* at 406.

Without reaching the merits of CNMI's argument that it enjoyed common law sovereign immunity, the *Fleming* court concluded "that in entering into the Covenant [CNMI] impliedly waived whatever immunity it might otherwise have enjoyed against suits in federal court arising under federal law." *Id.* at 407. Explaining that a "waiver of sovereign immunity can be found by express language, or by clear implication from the text," *id.* (citing *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)), *Fleming* looked again to the Covenant and reasoned that the affirmative omission of the Eleventh Amendment from the Covenant "clearly signal[ed] a waiver of any common law sovereign immunity against federal suits; there is simply no meaningful distinction between Eleventh Amendment immunity and common law sovereign immunity insofar as federal suits are concerned." *Id.* Fleming said that, otherwise, CNMI's "decision to exclude the Eleventh Amendment would make little sense and have been of no practical effect." *Id.*

In *Magana,* without reconsidering whether CNMI was entitled to a sovereign immunity defense, we observed our holding in *Fleming* with respect to that issue, and held that the district court had erred in granting summary judgment on the plaintiff's claim for overtime pay under the FLSA pursuant to an affirmative defense without first determining whether CNMI's delay in raising that defense prejudiced the plaintiff. *See Magana,* 107 F.3d at 1445. The district court in this case thus followed Ninth Circuit law when it relied on *Magana* to deny CNMI's motion to dismiss for lack of jurisdiction.

CNMI argues, however, that more recent Supreme Court cases—namely *Federal Maritime Commission v. South Carolina State Ports Authority,* 535 U.S. 743, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002), and *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)—overrule *Fleming* (and thus *Magana* ) by implication with respect to whether CNMI is entitled to sovereign immunity from private actions under federal law.

### 3. The Supreme Court's recent sovereign immunity jurisprudence and Fleming's viability

The Supreme Court recently reiterated that Eleventh Amendment immunity derives not from the Eleventh Amendment but "from fundamental postulates *implicit* in the constitutional design." *See Alden,* 527 U.S. at 728–29, 119 S.Ct. 2240 (emphasis added). In evaluating Eleventh Amendment issues, the Supreme Court has thus focused on "history and experience, and the established order of things, rather than ... the mere letter of the Eleventh Amendment in determining the scope of the States' constitutional immunity from suit." *Id.* at 727, 119 S.Ct. 2240 (internal citations and quotation marks omitted). CNMI argues that *Fleming's* reasoning—which is based primarily on the absence of *express* reference to the Eleventh Amendment in the Covenant—is thus contrary to the Supreme Court's recently clarified sovereign immunity jurisprudence. *See Fed. Maritime Comm'n,* 122 S.Ct. at 1871 ("[T]he Eleventh Amendment does not define the scope of the States' sovereign immunity; it is but one particular exemplification of that immunity."); *Alden,* 527 U.S. at 730, 119 S.Ct. 2240 ("To rest on the words of the Amend-

ment alone would be to engage in the type of a historical literalism we have rejected in interpreting the scope of the States' sovereign immunity since the discredited decision in *Chisholm* [*v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793)].").

Urging a broad reading of *Alden* and *Federal Maritime Commission*, CNMI asserts that it is entitled to sovereign immunity because the overarching purpose and design of the Covenant was to establish CNMI as a self-governing entity with many of the same attributes of sovereignty as the States. CNMI's argument rests on the Supreme Court's premise that the Eleventh Amendment

> stands not so much for what it says, but for the pre-supposition which it confirms. That presupposition, first observed over a century ago in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), has two parts: first, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent[.]

*Alden*, 527 U.S. at 729, 119 S.Ct. 2240 (some internal citations and quotation marks omitted). The Covenant established CNMI as a self-governing entity according to the "goals and values found in the American system of government." Sovereign immunity, CNMI argues, is thus a fundamental postulate implicit in the Covenant's history and design.

Federal judicial treatment of the Commonwealth of Puerto Rico as understood when the United States and the people of the Northern Marianas were negotiating the Covenant lends some support to CNMI's argument. Before CNMI entered into the Covenant with the United States, *Ursulich v. Puerto Rico National Guard*, 384 F.Supp. 736, 737 (D.Puerto Rico 1974), had held that the established principle of sovereign immunity—not to be amenable to a suit by an individual in its own courts or any other court without its consent—applied "to the Commonwealth of Puerto Rico ... for[it] possesses many of the attributes of sovereignty, and has the full power of local self-determination similar to the one the states of the Union have."[2] The legislative history of the Covenant from the United States' perspective reveals that Congress saw significant simi-

---

**2.** *See also Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Authority*, 991 F.2d 935, 939 n. 3 (1st Cir.1993) ("We have consistently treated Puerto Rico as if it were a state for Eleventh Amendment purposes."); *De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 121 (1st Cir.1991) ("The eleventh amendment, despite the absence of any express reference, pertains to Puerto Rico in the same manner, and to the same extent, as if Puerto Rico were a State."); *Fred v. Roque*, 916 F.2d 37, 38 (1st Cir.1990) (accord); *Paul N. Howard Co. v. Puerto Rico Aqueduct and Sewer Auth.*, 744 F.2d 880, 886 (1st Cir.1984) (accord); *Ramirez v. Puerto Rico Fire Serv.*, 715 F.2d 694, 697 (1st Cir.1983) ("Puerto Rico, despite the lack of formal statehood, enjoys the shelter of the Eleventh Amendment in all respects."); *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 777 n. 7 (1st Cir.1981) ("The principles of the Eleventh Amendment, which protect a state from suit without its consent, are fully applicable to the Commonwealth of Puerto Rico.").

The Supreme Court has declined to review the First Circuit's extension of Eleventh Amendment immunity to Puerto Rico. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 142 n. 1, 147, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (expressly abstaining from stating a view regarding the First Circuit's treatment of the Commonwealth of Puerto Rico like a State for Eleventh Amendment purposes in holding that, as a purported arm of the State, an autonomous Puerto Rican government instrumentality may take advantage of the collateral order doctrine to appeal a district court's order denying its claim to Eleventh Amendment immunity).

larities between CNMI and the Commonwealth of Puerto Rico:

> The essential difference between the Covenant and the usual territorial relationship, as that of Guam, is the provision in the Covenant that the Marianas constitution and government structure will be a product of a Marianas constitutional convention, as was the case with Puerto Rico, rather than through an organic act of the United States Congress.

S. Rep. 94–596, 1976 U.S.C.C.A.N., at 449; *see also Nabors v. Manglona*, 829 F.2d 902, 904 n. 1 (9th Cir.1987) (noting that CNMI's Covenant with the United States "created for the Marianas a commonwealth relationship similar to the one that Puerto Rico has with the United States").

CNMI, like Puerto Rico, entered into political union with the United States on the presupposition that it would be a self-governing commonwealth with many of the same attributes of sovereignty as the States. Under the First Circuit's approach, then, CNMI might well be entitled to State-like sovereign immunity according to the Supreme Court's understanding of the proposition for which the Eleventh Amendment stands. On the other hand, the States came into existence by way of a significantly different historical route than CNMI, and CNMI did not enter into political union with the United States on equal footing with the States.

■ We are not free, however, to explore these arguments de novo. A three-judge panel of this court cannot reconsider or overrule a decision of a prior panel unless "an *intervening* Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point." *United States v. Gay III*, 967 F.2d 322, 327 (9th Cir.1992) (emphasis added) (internal quotation marks omitted). The principles CNMI relies on from the Supreme Court's recently clarified Eleventh Amendment jurisprudence in support of its assertion of sovereign immunity here predate *Fleming*. *See Hans v. Louisiana*, 134 U.S. 1, 12–13, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Principality of Monaco v. Mississippi*, 292 U.S. 313, 322–23, 54 S.Ct. 745, 78 L.Ed. 1282 (1934); *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

We have already held that the part of *Fleming*'s reasoning that CNMI was a "person" under 42 U.S.C. § 1983 does not remain good law in light of *Will v. Michigan Department of State Police*, 491 U.S. 58, 68–70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), which held that States are not "persons" within the meaning of section 1983, and *Ngiraingas v. Sanchez*, 495 U.S. 182, 192, 110 S.Ct. 1737, 109 L.Ed.2d 163 (1992), which held that the territory of Guam was not a "person" within the meaning of section 1983. *See Magana*, 107 F.3d at 1438 n. 1; *DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir.1992). But "person" status under section 1983 is not closely relevant to any claim CNMI might have to Eleventh Amendment or common law sovereign immunity.

■ In sum, *Fleming* created an apparent inter-circuit conflict with the First Circuit, if CNMI and Puerto Rico are similarly situated commonwealths. We have found no closely-on-point intervening Supreme Court decision undermining *Fleming*'s holding that CNMI is not entitled to an Eleventh Amendment defense. *But see generally* JOHN THOMAS NOONAN, NARROWING THE NATION'S POWER: THE SUPREME COURT SIDES WITH THE STATES (2002). Nor have we found any Ninth Circuit authority questioning *Fleming*'s further holding that CNMI, at least by implication, waived any common law sovereign immunity when it ratified the Covenant. Accordingly, as a three-judge panel, we may not reconsider

*Fleming* and declare it overruled by implication.

We now turn to the question that decides the outcome of this case.

## B. The FLSA

The plaintiffs acknowledge that they are executive or administrative employees which the FLSA generally exempts from its overtime pay requirements. *See* 29 U.S.C. § 213(a)(1). Their sole argument on appeal is that proper application of the salary-basis test renders them nonexempt employees, because they are potentially subject to pay deductions for non-safety related disciplinary reasons. On the authority of *McGuire v. City of Portland, supra,* which the district court correctly followed, their argument has no merit.

Exempt status under the salary-basis test requires that compensation not be subject to reduction because of variations in the "quality or quantity of work performed." *See* 29 C.F.R. § 541.118(a). "Because the regulation goes on to carve out an exception from this rule for '[p]enalties imposed . . . for infractions of safety rules of major significance,' 29 C.F.R. § 541.118(a)(5), it is clear that the rule embraces reductions in pay for disciplinary violations." *Auer v. Robbins,* 519 U.S. 452, 456, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (alteration and omission in original).

The Supreme Court in *Auer* deferred to the Secretary of Labor's salary basis test, which is formulated on the premise that "employees whose pay is adjusted for disciplinary reasons do not deserve exempt status because as a general matter true 'executive, administrative, or professional' employees are not 'disciplined' by piecemeal deductions from their pay, but are terminated, demoted, or given restricted assignments." *See id.* The salary basis test thus denies "exempt status when employees are covered by a policy that permits disciplinary or other deductions in pay 'as a practical matter.'" *Id.* at 461, 117 S.Ct. 905. "That standard is met . . . if there is either an actual practice of making [deductions in pay for non-safety related disciplinary reasons] or an employment policy that creates a significant likelihood of such deductions." *Id.*

### 1. Actual practice

█ Here, no plaintiff claims to have had their pay adjusted for any attendance or non-safety related reason. The plaintiffs individually alleged by affidavit, however, that they were aware of similarly situated employees who had been disciplined by suspension for three days without pay in some cases and demoted in other cases. They argue that their personal allegations to this effect were sufficient to establish CNMI's actual practice of improper deductions to defeat exempt status. CNMI counters that these allegations should not be considered because they fail to satisfy the requirements of Federal Rule of Civil Procedure 56(e).

Rule 56(e) states that an affidavit "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." None of the plaintiffs' affidavits, however, establishes that the affiant had personal knowledge of the purported improper reductions in pay. Without this foundation, these allegations would be inadmissible at trial. *See* Fed. R.Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Moreover, it is impossible to evaluate potential hearsay implications of these statements without the required personal knowledge foundation; the plaintiffs could have learned this information

from being present when the purported improper reductions in pay occurred, by reading business records, by speaking with the officers in question, or even by double hearsay. The plaintiffs' affidavits are thus inadequate under Rule 56(e) with respect to the allegations of improper deductions in pay. *See Block v. City of Los Angeles,* 253 F.3d 410, 419 (9th Cir.2001).

### 2. Significant likelihood

■ The plaintiffs also argue that CNMI maintains employment policies that create a significant likelihood of deductions in their pay for non-safety related disciplinary reasons. CNMI counters that the plaintiffs have failed to allege anything more than what the Supreme Court and the Ninth Circuit have deemed insufficient to negate the salary basis test.

A written policy which is nominally applicable to all employees, both salaried and non-salaried, and authorizes deductions which would be proper only for non-salaried employees, does not, without more, communicate as a practical matter that such deductions will be made for employees that otherwise satisfy the salary basis test. This interpretation avoids the imposition of "massive and unanticipated overtime liability" on employers merely because they maintain broadly worded policies nominally covering whole ranges of employees, which they have not applied, and are not likely to apply, to salaried employees.

*Stanley v. City of Tracy,* 120 F.3d 179, 184 (9th Cir.1997) (citing *Auer,* 519 U.S. at 461–62, 117 S.Ct. 905).

We reiterated in *McGuire* that the controlling factor is not whether the department head or the employees subjectively believe the employees could be subject to improper deduction. *See* 159 F.3d at 463. Rather, there must be an objectively-based significant likelihood that penalties incon-

sistent with salaried status would be imposed. *Id.* Accordingly, we held in *McGuire* that affidavits of supervisory and administrative officers (which stated that they understood disciplinary policies to apply to salaried employees and that they would have imposed sanctions on any police chief who violated the rules, including sanctions that would be inconsistent with salaried status) did not establish a significant likelihood that such sanctions would be imposed. *Id.* at 463–64.

In support of their "significant likelihood" argument, the plaintiffs first point to the Personnel Service System Rules and Regulations. Those rules and regulations, however, nominally apply to all CNMI employees and provide for a range of disciplinary actions, some of which would be consistent with salaried status. The plaintiffs additionally cite the Department of Public Safety Rules and Regulations and the Department of Public Safety Professional Standards, which also generally apply to both salaried and non-salaried employees, and include disciplinary actions which would be consistent with salaried status. These written policies are, therefore, insufficient by themselves under *Auer, Stanley,* and *McGuire* to establish a significant likelihood of improper deductions in pay to defeat exempt status.

Finally, the plaintiffs rely on instructional memoranda issued by the Director of Personnel, which they say "effectively communicated" to salaried employees that their failure to comply with time and attendance policies or abuse their salaried status subjects them to disciplinary action, ranging from reprimands and demotions to pay deductions. These memoranda do not create a significant likelihood of improper deductions in pay. To the contrary, they indicate CNMI's plan to discipline salaried employees appropriately so as not to defeat their exempt status under the FLSA (e.g., deductions in accordance with 29

C.F.R. § 541.5d or non-pay related disciplinary actions). Although there is a hypothetical possibility that a salaried employee could be disciplined through improper pay deductions, there is no significant likelihood of such deductions given CNMI's continued efforts to comply with requirements of exempt status under the FLSA and the absence of adequately asserted evidence showing that any salaried employee has actually been improperly disciplined. *See Stanley,* 120 F.3d at 184–85 (reasoning that although written policies could have been applied inconsistently with salaried status, "[t]he City has at all relevant times regarded these employees as exempt, and would not have approved suspensions that … would have jeopardized that status").

### III.

We have been cited to no Supreme Court language which would permit us to reconsider *Fleming's* holding that CNMI is not entitled to an Eleventh Amendment immunity defense. We likewise find no case calling into question *Fleming's* additional holding that the CNMI waived common law sovereign immunity when it entered into the Covenant. The district court properly granted summary judgment in CNMI's favor because the plaintiffs pointed to no evidence which shows that CNMI maintains an actual practice of imposing penalties inconsistent with the plaintiffs' salaried status, or that there is a significant likelihood that CNMI would impose deductions in pay for violation of non-safety related rules.[3]

**AFFIRMED.**

---

**3.** Because we conclude that the plaintiffs are exempt from the FLSA's overtime pay requirements, we do not reach CNMI's affirmative defense of accord and satisfaction with respect to plaintiff Camacho.